# CASE NO. _____

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 MAR 31  PM 4: 27

DEPUTY CLERK _____

| | |
|---|---|
| Frankie N. Morgan, Angela Morgan-Lyles, *Plaintiffs* | THE U.S. DISTRICT COURT |
| Vs. | |
| Harmony Public Schools-Harmony School of Nature and Athletics, Harmony School of Nature, Hatoon Dablouk, Jennifer Robertson, Winston John, Ersin Koncur, G. William Franz, Roberto Barajas Thomas, Alexandra Goldblatt, Robert Lichtscheidl, Gloria Myers, *Defendants.* | NORTHERN DISTRICT OF TEXAS 3-16CV0898-D DALLAS DIVISION |

## I. PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Frankie N. Morgan brings about a complaint against Harmony Public Schools-Harmony School of Nature and Athletics-Harmony School of Nature (hereinafter referred to as "HPS-HSN"). Plaintiff alleges the following:

## II. NATURE AND COMPLAINT OF THE CASE

This case concerns the deliberate and intentional misconduct of teachers and staff at HPS-HSN, the negligence of the school to exercise its fiduciary duty to protect and educate a student at the appropriate level, and the egregious violations of a Federal Statute: §504 of the Rehabilitation Act of 1973, and a breach of contract. This directly violates Federal Statutes as well as Texas State Laws. As a result of the aforementioned failures, which are enumerated in more detail below, Frankie N. Morgan was deprived of his Free and Appropriate Public Education, he was intentionally discriminated against because of his disability, he was harassed and bullied by teachers, and he suffered irreparable cognitive and educational harm at the hands of the educational institution that was entrusted to safeguard his development and learning. We will show that:

1. Frankie Morgan was a student diagnosed with ADD/ADHD. Because of such, Frankie was eligible for placement into the Section 504 program. However, at the primary levels of education, Frankie had managed to control the affects of his ADD/ADHD, but the overwhelming nature of high school would force Frankie to seek support.

2. While enrolled in HPS-HSN Frankie was having trouble keeping up with the assignments and turning them in on time. He was constantly falling behind and receiving failing grades due to his ADD/ADHD.

3. Parents and Administrators placed Frankie into the Section 504 program and developed a practical plan to accommodate his learning disability by lessening the quantity of work and/or increasing the amount of time Frankie would have to complete assignments.

4. Teachers were given copies of the Federally mandated Section 504 Individualized plan so they could begin implementing them as soon as possible.

5. Teachers inconsistently followed the plan, or abandoned the plan altogether, causing the Parent to have several meeting to bring the matter to both the teachers' and administrators attention and to encourage teachers to consistently administer the plan.

6. Teachers were re-trained by HPS-HSN SPED/504 school officials regarding the school district's expectations that each teacher administer the plan every day for every assignment.

7. Teachers continued to ignore the plan, the law, and the student's education.

8. Parent files complaints with the school, school district, and OCR.

9. The matter is investigated by Dr. Davenport, consultant SPED/504 expert for HPS-HSN who found that Frankie was not consistently being accommodated by teachers and that HPS-HSN owed Frankie compensatory educational services.

10. Dr. Davenport also discussed, in a 504 meeting, the terms and conditions of administering the compensatory educational services to Frankie over the summer of 2013. The Parents agreed to this arrangement.

11. Dr. Davenport was fired and HPS-HSN refused to provide the compensatory educational services which everyone had agreed upon thereby breaching the contractual agreement for compensatory educational services that were owed to Frankie.

12. In subsequent years, teachers called Frankie names, made accusations that Frankie was trying to threaten their lively hoods, intimidated, harassed, and caused Frankie stress and mental anguish and then offered Frankie money and told him to get out of the school.

13. As a result, Frankie became annoyed, stressed, depressed, and had to visit the counselor, and receive medication for anxiety, he was unable to pass the STAAR test 14 times, received low scores on the ACT, Frankie was unable to get acceptance into his desired universities, embarrassment of being enrolled in all remedial college classes.

14. The damages caused to the Morgan-Lyles family include but are not limited to: tutor expenses medical expenses, legal expenses, college tutor expenses.

15.     Lastly, HPS-HSN's acts and omissions led to the discrimination of Frankie, as well as the constructive and actual denial of his Federally guaranteed right to an appropriate education. Plaintiff files this lawsuit to enforce these rights, and others guaranteed to Frankie by federal and state law.

16.     Plaintiff brings this action again HPS-HSN pursuant to Section 504 of the Rehabilitation Act of 1973, (section 504), 29 U.S.C. § 794,34 C.F.R. Part 104 (Rehabilitation Act) and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, 28 C.F.R. Part 35, et seq., for being a victim of discrimination based upon his disability.

### III. JURISDICTION

17.     Jurisdiction is conferred upon this Court pursuant to the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12132, *et seq.*; Section 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 794 (amended 1992), *et seq.* and its implementing regulations at 34 C.F.R. Part 104, because the matters in this controversy arise under the laws and rules of the United States.  Further, this Court has pendant jurisdiction to adjudicate any state claims which arise out of the same facts as the federal claims asserted herein.

18.     This Court has jurisdiction pursuant to Section 504 of the Rehabilitation Act of 1973 and 42 U.S.C § 2000(d) *et seq.*, to award attorneys' fees and costs to the Plaintiff.

### IV. VENUE

19.     Under 28 U.S.C. § 1391, venue is proper in this Court because the events and omissions giving rise to the Plaintiff's claims occurred in Northern District of Texas, Dallas Division.

### V. PARTIES

20.     Frankie N. Morgan is a citizen of the State of Texas and a resident of Dallas, Dallas County, Texas and was, at all pertinent times, a pupil in the HPS-HSN . He was considered a "student with [a] disability" as defined by Section 504 of the Rehabilitation Act of 1973 & the Americans with Disabilities Act of 1990 (Title II) Frankie is a citizen of the State of Texas and lives at 6931 Clarkridge Drive, Dallas, Texas 75236.

21.     HPS-HSN is responsible for the administration of education in the HPS-HSN Public School System. HPS-HSN is responsible for developing educational policies, procedures, and for implementing procedures for students with disabilities to ensure that such students are free from retaliation, harassment, interference, bullying and discrimination due to their disabled status.  In addition, HPS-HSN is ultimately responsible for hiring, training, and retaining

educational staff, counselors, and administrators. HPS-HSN may be served by sending a copy of this complaint and summons to Soner Tarim, Superintendent of the HPS-HSN Public Schools, 701 S. Industrial Blvd. Euless, Texas 76040.

## VI. GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

22.     Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full. Further, Plaintiff's claims against HPS-HSN are not barred by sovereign immunity or, in the alternative, HPS-HSN has waived sovereign immunity by its conduct. Additionally, HPS-HSN has demonstrated negligence and breached its fiduciary duty to Frankie as follows:

23.     Frankie N. Morgan, was a student that had previously been diagnosed with ADD/ADHD . He was attending HPS-HSN and during the spring of 2012, Mrs. Goldblatt (ELA teacher) spoke to Mrs. Morgan-Lyles about Frankie's ADD and informed Mrs. Morgan-Lyles that the school had a program that could assist students with learning disabilities. Mrs. Goldblatt told Mrs. Morgan-Lyles to speak with Mrs. Reimer, the Special Education Coordinator.

24.     Around April 2012 Mrs. Morgan-Lyles asked Mrs. Reimer if she could put Frankie in the program that will help me with his ADD. Mrs. Reimer said since it's the end of the school year we will wait until next school year to look at putting Frankie in the program.

25.     In August 2012, Mrs. Morgan-Lyles spoke with Mrs. Reimer and again asked if Frankie could be put into the program that assisted students with their learning disabilities. Ms. Reimer stated, she wanted to wait until grades come out to see how Frankie did on his report card.

26.     On November 7, 2012, Mrs. Morgan-Lyles met with Mrs. Reimer, Mrs. Prekup, and Mrs. Goldblatt to come up with the 504 plan for Frankie and, it was determined that Frankie qualified for 504 accommodations but did not qualify for special education. A plan was implemented and it consisted of Frankie getting assignments shortened by 25%, Frankie receiving two extra days to turn in assignment before points are deducted, oral testing, small group testing, note-taking assistance, preferential seating, assignment notebook, and organizational strategies.

27. In February 2013, Mrs. Morgan-Lyles began noticing that Frankie was not being accommodated according to Frankie's 504 plans. Mrs. Morgan-Lyles began speaking with Frankie's teachers that were not accommodating me and reminding them that Frankie had a 504 plan, she also asked the teachers if they had received a copy of the 504 plan. Mrs. Morgan-Lyles then spoke to the Mrs. Prekup (SPED Coordinator) and asked her if all the teachers knew about Frankie's accommodations. Mrs. Reimer insured Mrs. Morgan-Lyles that the teachers knew about Frankie's accommodations and that the teachers had to sign for a copy of Frankie's accommodations acknowledging that they knew 1) that Frankie now had a 504 plan, 2) the manner in which the plan was to be administered, 3) the duration of the plan, and 4) to signify they would comply with the federal SPED/504 laws.

28. In February 2013, Mr. Lichtscheidl (webmaster teacher) made negative comments about Frankie to Mrs. Morgan-Lyles. Mr. Lichtscheidl told Mrs. Morgan-Lyles that Frankie was sitting next to the smartest kid in class. Mr. Lichtscheidl then said he had to move Frankie because it's not doing any good!

29. On February 6, 2013, Mr. Lichtscheidl (webmaster teacher) told Frankie that he doesn't have any respect for himself because Frankie likes Kat Von Dee (tattoo artist), and that Mr. Lichtscheidl was surprised Frankie wasn't doing his report on the X-Box. (a game Frankie had previously won in Mr. Lichtscheidl class). After winning the X-box Mr. Lichtscheidl wanted Frankie to return the X-box and Frankie declined. Mr. & Mrs. Lyles had to have a conference with Mr. Lichtscheidl about his many comments, and filed a complaint with Mr. Dantzler (Dean of Discipline) on February 8, 2013.

30. In February 2013, Mrs. Morgan-Lyles spoke to Mrs. Goldblatt (English teacher) and asked Mrs. Goldblatt why she wasn't accommodating Frankie. Mrs. Goldblatt looked away and replied, she had forgotten about the accommodations and would go back and make changes to Frankie's grades. Mrs. Goldblatt also asked Mrs. Morgan-Lyles if she could speak with the other teachers and help them with Frankie's accommodations. Mrs. Goldblatt also said the program was new to some of the teachers and she could show them how Frankie's accommodations are suppose to work.

31. Between February- April 2013, the following parent/teacher conferences occurred:
- Mrs. Morgan-Lyles (parent) spoke with the Mr. Konkur (English teacher). Mr. Konkur stated he did not know he was supposed to reduce Frankie's assignments by 25%.
- Mr. Lichtscheidl (Webmaster teacher) told Mr. & Mrs. Lyles the he had not been shortened Frankie's assignment or giving Frankie extra time on assignments. Mr.

- Lichtscheidl also said Frankie's 504 plan was buried under some folders and that he did not know about the accommodations.
- Mrs. Morgan-Lyles (parent) spoke with Mr. Barajas (Spanish teacher) and he stated he was not giving Frankie extra time to complete his in class assignments. Mr. Barajas asked if Frankie runs out of time what should he do? Mrs. Morgan-Lyles explained to Mr. Barajas that he has to find the time to allow Frankie to complete assignments. Mr. Barajas said Frankie had 3 assignments with failing grades because he did not complete them. Mr. Barajas said he would give Frankie extra credit assignments to bring up those grades. *But giving Frankie extra assignments is contrary to his 504 Plan. The goal of the 504 plan is to give Frankie 25% LESS work not more work.* Mrs. Morgan-Lyles informed Mr. Barajas that she would speak with Mrs. Reimer about the issue.
- Mrs. Prekup explained to Mrs. Morgan-Lyles that she did not meet with Frankie daily to help develop organizational skills which is part of his 504 accommodations. Mrs. Prekup stated she was in other meetings at the school during the time she was suppose to meet with Frankie.
- Mr. Franz never shortened assignments by 25% nor extended Frankie's testing time or assignment due dates.

32. On February 8, 2013, Mrs. Morgan-Lyles spoke with Mrs. Reimer about the parent-teacher conference that had transpired with Mr. Barajas. Mrs. Morgan-Lyles informed Mrs. Reimer that Mr. Barajas was not giving Frankie extra time to complete his assignments. Mrs. Reimer said Mr. Barajas has to find a way to give Frankie extra time on assignments, even if Frankie have to come in early or stay late; Mrs. Reimer said she would speak to Mr. Barajas about the issue.

33. In February 2013, Mr. Barajas told *Frankie he had to sit closer to Mr. Barajas's desk because of Frankie's 504 accommodations.* Mr. Barajas made this comment in aloud, in class, and front of other students.

33.a On February 18, 2013, Mrs. Morgan-Lyles spoke with Mrs. Prekup about the incident. Mrs. Prekup dropped her head and said Mr. Barajas can't mention Frankie's 504 accommodations in front of the class or other students. Mrs. Moragn-Lyles said do you know how Mr. Barajas made Frankie feel. Mrs. Prekup replied terrible I'm sure, she then said had a meeting with the teachers about Frankie's accommodations.

33b. On February 28, 2013, Mr. & Mrs. Lyles met with Mrs. Reimer about Mr. Barajas' making comments to Frankie about Frankie's 504 plan in from of other students. Mrs. Reamer said she had a meeting with the teachers about Frankie's 504 plan and explained that teachers could not make comments about Frankie's 504 plans for any student's 504 and/ or IEP in front

of other students, and teachers were told to pull students aside to talk to them. Mrs. Reimer said teachers should cross out problems on Frankie's assignments.

34. In March 2013, Mr. Barajas stole Frankie's notes from Frankie's personal binder. Mr. Barajas asked Frankie for some notes, as Frankie looked for the notes in his backpack Mr. Barajas opened Frankie's binder, took the notes without Frankie's permission. Mr. Barajas then told Frankie he needs to get organized. Mr. Barajas then gave Frankie's notes to Mrs. Prekup and never returned them. Mr. & Mrs. Lyles had a conference with Mr. Basoglu (principal) and Mr. Barajas stealing Frankie's papers out this Binder. Mr. Basoglu assured Mr. & Mrs. LKyles that he would investigate the situation but that he didn't understand exactly what Mr. & Mrs. Lyles was talking about, and to send their complaint to Mr. Basoglu via email so he could better understand what had transpired. After sending the complaint to Mr. Basoglu via email, Mr.Basoglu dismissed the complaint stating it wasn't sent to him on the correct form.

35. On March 7, 2013, Mrs. Prekup accused Frankie of threatening her lively hood. Mrs. Prekup stated that she gave Frankie a soda and that Frankie said he was going to tell everyone the soda made him sick. Frankie said this in a joking manner and also stated that he was only teasing with Mrs. Prekup. An incident report was created and Frankie was forced to sign the document without his parents' knowledge. Mr. & Mrs. Lyles were contacted about the incident afterwards. A conference was held the same day. It was determined that Frankie and Mrs. Prekup had a history of joking with each other. Mr. & Mrs. Lyles suggested they no longer joke with each other and that Frankie should have no further contact with Mrs. Prekup. Mr. & Mrs. Lyles informed Mrs. Prekup and Mr. Dantzler that Frankie is a minor and he is no longer permitted to sign any documents without the parents knowledge and or presence.

36. In April 2013, Mrs. and Mr. Lyles and my advocate (Mrs. Adina Rich) met with Mrs. Cancurt (HPS-HSN 's District Coordinator) to inform her of what had transpired in the last few months. Mr. & Mrs. Lyles explained that the teachers had not been accommodating Frankie according to Frankie's 504 plans. Mrs. Cancurt replied, *"Adina Rich, you know we don't have the best teachers here at HPS-HSN and we cannot make the teachers follow the 504 plan."* Mrs. Rich asked Mrs. Cancurt if she knew what she was saying? Mrs. Cancurt replied *"Yes, if you want to file a complaint with OCR or TEA you can, HPS-HSN had complaints filed on the school before".* Mrs. Rich replied, *"this is a Federal Law, you have to follow it!.* Mr. Lyles replied , *"why can't you make the teachers do their job, if they won't do their job replace them with another teacher."* Mrs. Cancurt said, *"and what if that teacher doesn't do their job, then what do she do because Mrs. Cancurt can only trained them but I can't make them accommodate the children."* Mr. Lyles replied, *"then you find another teacher that will*

*accommodate children and don't stop until you get it right teacher."* Again Section 504 accommodation plans are to benefit the students- to lessen the work for the students *not* the teachers.

37. On April 4, 2013, Mr. & Mrs. Lyles and our advocate (Adina Rich) had a 504 meeting with HPS-HSN's staff. The meeting consisted of Mrs. Goldblatt, Mrs. Reimer, Mrs. Cancurt, Dr. Natalie Davenport, LSSP(Diagnostic Assessment Services), Mrs. Adina Rich, Ms. Torres, and Mrs. & Mr. Lyles. While in the meeting Dr. Davenport admitted to tampering with and deleting Mr. & Mrs. Lyles recording as they talked with Mrs. Adina Rich in the hallway about modification vs. accommodation. (Dr. Davenport & Mrs.Cancurt inadvertently recorded themselves tampering with and deleting the recordings). Mrs. Cancurt said that she thought the recorder was a phone. Mrs. .Morgan-Lyles asked Mrs. Cancurt why would she tamper with someone else's phone? –Then Dr. Davenport admitted that she was the one who tampered with the phone said to blame her and not HPS-HSN. Then we resumed the 504 meeting. Dr. Davenport admitted that Frankie had not been accommodated according to his 504 plan and that HPS-HSN owed Frankie compensatory educational services. Dr. Davenport stated that after her investigation she found that Frankie had not been accommodated in the following areas: not consistently given extended time on assignments, shortened assignments, and extra time on test. Dr. Davenport further stated that compensatory services were to be given during the summer of 2013 for boosting skills. Dr. Davenport assures Mr. & Mrs. Lyles that she would return to ensure compensatory services were given and to ensure Frankie was being accommodated according to the law. Mr. & Mrs. Lyles (my parents) agreed to the terms of the educational compensatory services for the summer of 2013. It was decided that everyone in the meeting would reconvene in 30 days to discuss the new changes made to the current plan to if how they were working for Frankie.

38. On May 20, 2013, Gloria Myers had a conversation with Frankie while in class. Gloria Myers told Frankie he was in Special Education and that Frankie has an IEP. Gloria Myers also told Frankie the he would not be able to get into college with his grades. Gloria Meyers then compared Frankie to her son by saying her son has special needs and that Frankie and her son have the same type of problems. Mrs. Morgan-Lyles filed a complaint with the school against Mrs. Gloria Meyers.

39. On May 29, 2013, another 504 Meeting took place. The meeting consisted of Mr. & Mrs. Lyles, Jeremy White (Frankie's teacher), Sibel Cancurt (Director of Special Programs-District), Staci Reimer, Attorney Shake (my parent's attorney), & Attorney Rhonda Crass (HPS-HSN's attorney). Dr. Davenport, LSSP (Diagnostic Assessment Services) did not return

to the 504 meeting. Mr. & Mrs. Lyles discussed concerns that the new accommodations were not working for Frankie. Attorney Crass said she saw nothing wrong and wasn't going to change the accommodations. Mr. & Mrs. Lyles asked about the compensatory services that were awarded to Frankie. Attorney Crass breached the contractual agreement between HPS-HSN and the Morgan-Lyles family when she said HPS-HSN doesn't owe Frankie compensatory educational services and HPS-HSN never offered compensatory educational services to Frankie. Attorney Shake asked to see the minutes from the previous meeting. Mrs. Reimer began reading the minutes, when Attorney Shake said the handwritten minutes don't match the typed minutes Mrs. Reimer stopped talking. Mrs. Reimer then said she couldn't find the minutes. After listening to a recording of the April 2013 meeting, Attorney Shake questioned Ms. Rimer for the whereabouts of the minutes because he had heard Dr. Davenport say on the recording that, HPS-HSN owed Frankie Morgan compensatory services and that information was contained in the April 2013 minutes. Mrs. Cancurt began looking for the minutes and said she know they were in the file. Attorney Shake said copies of minutes were never given to the Lyles Family or their advocate in the April 2013, 504 meeting, and now you claim you can't find the April 2013, 504 minutes in the current meeting of May, which is a violation under OCR. Minutes were never produced during this meeting. Mr. & Mrs. Lyles asked if they could be reimbursed for their attorney fees. Attorney Crass said submit an invoice and they would consider it. HPS-HSN 's attorney offered my parent's $3,000 of their $8,974.67 with the condition they would withdraw Frankie from their school and not enroll my siblings at HPS-HSN  and sign a release of all potential claims. Mr. & Mrs. Lyles declined the offer saying Frankie had done nothing wrong and should not be forced out of the school simply because HPS-HSN 's teachers failed to accommodate Frankie according to the Federal law.

40. In August/September 2013, Mrs. Morgan-Lyles filed a complaint with Department of Education {OCR} against HPS-HSN .

41. Mrs. Ford speaks to Frankie as if Frankie is mentally challenged. Ms. Ford talks extremely slow and repeats assignment to Frankie multiple times. Even after Frankie told Ms. Ford he understands Ms. Ford continues to repeat the assignment extremely slow and several more times.

2013-2014 School Year
42. The Fall 2013, 504 meeting never took place, however according to the May 29, 2013, minutes a meeting was required to transpire. Mrs. Morgan-Lyles (parent) spoke with Mrs. Cox about Frankie's new 504 accommodations. Parent explained that the new accommodations

were not working for Frankie and that some of Frankie's teachers were not accommodating him. Ms. Cox said she would look into the matter.

43. In 2013 Mrs. Morgan-Lyles filed a Request of Freedom Information from HPS-HSN to obtain documents (emails, recordings, 504 File, etc) that pertain to Frankie Morgan. Once they were acquire, the minutes from the April 2013, 504 meeting did in fact show that Dr, Davenport said Frankie had not been accommodated and that HPS-HSN was going to supply Frankie with additional education over the summer of 2013 to boost his skills as Compensatory Educational Services

43a. In August/ September 2013, Mr. & Mrs. Lyles had a meeting with Mr. Nihat Bayhan, the Area Superintendent for HPS-HSN, about teachers harassing/ threatening/ intimidating Frankie Morgan. During the course of the meeting, Mr. Lyles explained the reason this this meeteing was because they had submitted numerous complaint to Principal Mehmet Bosoglu who told them to simply email their complaints to him. But, when this was done, Principal Mehmet Bosoglu would dismiss all the complaints. Finally, Principal Mehmet Bosoglu admitted that he kept dismissing the Lyles' complaints because they were not on a complaint form, a form that is not readily available to parents. So then the parents emailed the school's Superintendent to request a meeting. At that meeting, Mr. Bayhan wanted Mr & Mrs. Lyles to re-submit their current complaint (and not attach the previous complaints) to him. Mrs. Lyles stated that according to HPS-HSN's handbook, they must submit the previous and current complaints altogether. Mr. Bayhan said he does not need the additional documentation only the current complaint. Mrs. Lyles said they were going to follow the policies and procedures in HPS-HSN's handbook so their complaint would not get dismissed again. Then Mrs. Lyles commented that "this is ridiculous, now you are telling us to *not* follow the HPS-HSN's policies and procedures". Mr. Bayhan at that moment, got angry, stood up and said this meeting is over and walked out of the meeting.

44. November/December 2013, Mrs. Morgan-Lyles (parent) pulled Due Process complaint because Ms. Aslan and Ms. Cox agreed to change (Frankie's) 504 accommodations. Mrs. Morgan-Lyles explained that the 504 Plan wasn't working and Frankie wasn't being accommodated.

45. In January 2014, Mr. & Mrs. Lyles met with Mrs. Cox to discuss the teachers that were not accommodating Frankie. Which included: Hatoon Dablouk, Jennifer Robertson, Winston John, Ersin Koncur, G. William Franz, Roberto Barajas Thomas, Alexandra Goldblatt, Robert Lichtscheidl, Gloria Myers.

46. In February 2014, Mrs. Morgan-Lyles requested a copy of Frankie's educational records and 504 file. When Mrs. Morgan-Lyles met with Ms. Cox, Mrs. Morgan-Lyles explained that Frankie was not being accommodated.

On March 24, 2014,
47. Mrs. Morgan-Lyles requested a copy of Frankie's 504 records. Mrs. Morgan-Lyles realized the 504 Meeting Summary and Accommodation Plan date April 4, 2013, was missing. Mrs. Morgan-Lyles asked Ms. Cox about the missing documents. Ms. Cox and Mrs. Aslan said when they received Frankie's 504 file the documents were already missing.

On September 10, 2014
48. Mr. & Mrs. Lyle's' (parents) had a 504 meeting with HPS-HSN 's staff. HPS-HSN wanted to discuss whether Frankie was entitled to compensatory services from 2012-2013 school years. Ms. Aslan offered school-wide tutorials for Frankie, not individualized compensatory services as specified by IDEA and the Rehabilitation Act of 1973. My parents explained that on the April 4, 2013 meeting Dr. Davenport awarded compensatory services because Frankie was not accommodated therefore he should receive compensatory services. Ms. Aslan said she didn't have a copy of the 504 meeting from April 4, 2013 and didn't know who Dr. Davenport was. Ms. Aslan claimed that HPS-HSN did not hire Dr. Davenport. Mr. & Mrs. Lyles explained to Ms. Aslan that according to the minutes from April 4, 2013, Dr. Davenport was not only at the 504 meeting, but she chaired the meeting. Furthermore Dr. Davenport was hired by HPS-HSN to determine if HPS-HSN owed Frankie compensatory services because Frankie was not accommodated. The compensatory services that were discussed are, not consistently given extended time on assignments, shortened assignments, and extra time on test. She further stated that compensatory services were to be given in during the summer of 2013 for boosting skills. Mr. & Mrs. Lyles agreed with Dr. Davenport's decision and accepted the services that were offered. We agreed to meet in 30 days to see if Frankie's new accommodations were working.

49. On October 9, 2014, a 504 Meeting took place to discuss Frankie's accommodations. There were numerous changes made to Frankie's plan. Mrs. Morgan-Lyles did not agree with the accommodations. Frankie's accommodations consisted of shortening assignments by 25%, 2 extra days to turn in assignment before points were deducted. If any assignment received a grade lower than 70, Frankie could take the assignment home and use the internet to correct it for a higher grade. Mrs. Morgan-Lyles did not agree with the accommodations because Frankie

would not actually be learning anything if he could take an assignment home, look up the answers and return it to the teacher for a perfect grade.

50. Mrs. Morgan-Lyles spoke to Ms. Cox and complained about Frankie's 504 plans and that it was not working. Ms. Cox said told Mrs. Morgan-Lyles that they could have a 504 meeting to change the plan.

51. In September 2014, Mrs. Morgan-Lyles had a parent teacher conference with Mrs. Jennifer Robertson. In the conference Mrs. Robertson stated she was not shortening Frankie's reading assignments by 25%. Mrs. J. Robertson did not accommodate Frankie on his reading assignments. Ms. Aslan said all teachers had been trained on FERPA, FAPE, and Frankies's 504 accommodations.

52. In September 2014, Mr. Winston John didn't shorten Frankie's assignments by 25%. During two parent/teacher conferences Mr. Winston John who was a math/engineering teacher, not a special education expert or even a special education teacher, admitted to Mrs. Morgan-Lyles that he NEVER accommodated Frankie because he felt like Frankie *Does Not* need any type of accommodations. Mr. John stated Frankie was a good child that had leadership qualities and Frankie just needed to be pushed.

53. In December 2014, Mrs. Morgan-Lyles had another parent/teacher conference with Ms. Jennifer Robertson. Mrs. Robertson stated that she had not accommodated Frankie in reading during the first semester. Mrs. Robertson also admitted that she hadn't shortened Frankie's assignments by 25% because she wasn't sure how to calculate deducting 25% of an assignments. Mrs. Robertson further stated that she had lost the 25% assignment cheat sheet Ms. Cox created to assist teacher with Frankie's calculations. (which incidentally, simply stated, for example, that if a test had 20 items, the teachers had to cross out 5 items before giving the test to the student. And if the teacher felt all test items were important, then they should give the student more time to complete the test). Ms. Robertson Did Not omit/cross off the problems before giving them to Frankie. Mrs. Morgan-Lyles gave Mrs. Robertson another copy of the (25% assignment cheat sheet).

54. In January 2015, Mrs. Morgan-Lyle filed a complaint with the Department of Education (OCR) against HPS-HSN.

55. On January 15th & 20th, 2015, Mrs. Hatoon Dablouk failed to follow Frankie's 504 Plans on multiple assignments and refused to listen to Frankie when he tried to explain his accommodations. Mrs. Dablouk wouldn't shorten Frankie's assignments or give Frankie extra

time to turn in assignments. When Frankie asked Ms. Dablouk to shorten the assignments Ms. Dablouk ignored Frankie. According to Frankie's accommodations he suppose to receive 2 extra days to turn in assignments, shortened assignments by 25%, the teacher is suppose to cross out/omit the problems before giving Frankie the assignments. During the first semester Mrs. Dablouk accommodated Frankie on all of his assignments.

56. On January 26, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening his *Pyramid Printout* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

57. On January 29, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's *Cycling of Materials* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

58. On February 2, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening his assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

59. On February 2, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening his *Food Chains & Web* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

60. On February 17, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's *Concept Review* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

61. On February 18, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's *BIOME* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

62. On February 26, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's *Chapter 6: Biomes* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

63. On February 26, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

64. On March 3, 2015, Mrs. Dablouk intentionally failed to accommodate Frankie by not shortening Frankie's *Grassland, Desert, and Tundra Biomes* assignment by 25%, nor did she cross out/omit the problems before giving me the assignment.

65. Mrs. Morgan-Lyles had approximately 5 meetings with Mrs. Cox expressing how displeased she was with Frankie's teachers not accommodating Frankie, especially since two of the teachers, Mrs. Dablouk & Mrs. Robertson, Had attended previous 504 meetings (in Sept. 10 & Oct. 9, 2014) Parents and Mrs. Cox. Mrs. Cox assured Mrs. Morgan-Lyles that she would speak to the teachers to find out what had transpired. Mrs. Cox and Mrs. Morgan-Lyles met several times in December 2014. Mrs. Cox stated she had given Mr. John and Mrs. Robertson individual training on Frankie's 504 accommodations.

## VII. CAUSES OF ACTION CLAIMS FOR RELIEF PURSUANT TO THE REHABILITATION ACT OF 1973

66. Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full:

67. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations require that each state that receives federal financial assistance, including the state's political subdivisions, such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability, it violates Section 504.71. Plaintiff asserts that HPS-HSN had a duty to keep to Frankie safe from harm, failed to keep Frankie safe from harm, and failed to provide him with a non-hostile learning environment. Such failures, together and separately, constitute a violation of Frankie's rights under Section 504, and the federal rules and regulations promulgated pursuant thereto.

## VIII. CLAIMS FOR RELIEF PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

68.     Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

69.     Frankie is an individual with a disability as defined under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

70.     HPS-HSN's acts and omissions in the instant case constitute a pattern and practice of failing to provide students, like and including Frankie Morgan, with a free and appropriate public education in accordance with his educational needs, in violation of Section 504 of the Rehabilitation Act of 1973 and IDEA.   Defendant HPS-HSN knew of—yet failed to shield Frankie against Ms. Gloria Myers, and her harassing behavior. Notwithstanding HPS-HSN's knowledge of the harassing & apparent misconduct described herein by Gloria Myers, HPS-HSN's continued to breach of their fiduciary duty to protect Frankie.

71.     HPS-HSN's acts and omissions demonstrate conscious disregard for the rights of Frankie to a free and appropriate public education, and are in violation of the Americans With Disabilities Act, 42 U.S.C. § 12132.  As a result, Plaintiff has suffered damages as described herein.

72.  HPS-HSN's acts and omissions demonstrate retaliation, harassment and/or interference conscious disregard for the rights of Frankie to a free and appropriate public education and are in violation of the Americans With Disabilities Act, 42 U.S.C. § 12132 and 42 US.C. § 12203(b).  As a result, Plaintiff has suffered damages as described herein.

## IX. STATE ACTION

73.     Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

74.     HPS-HSN was at all times, and in all matters, acting under color of state law when it permitted Plaintiff to be subjected to the wrongs and injuries set forth herein.

## X. CLAIM FOR RELIEF PURSUANT TO THE TEXAS HUMAN RESOURCES CODE

75. Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

76. Chapter 121 of the Texas Human Resources Code provides that a person may seek a civil remedy in a court of competent jurisdiction if she has been denied access to a facility or a program in this state supported, in whole or in part, by public funds and if an entity has failed to make reasonable accommodations in its policies, practices, and procedures as to the complainant. *See* Tex. Hum Res. Code § 121.004.

77. HPS-HSN consistently failed to follow policies and procedures by not accommodating Frankie, thereby violating his rights pursuant to Section 121.004 of the Texas Human Resources Code.

## XI. NEGLIGENCE PER SE

78. Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

79. HPS-HSN is negligent *per se*, for violating the rules and regulations regarding proving Frankie with a free and appropriate public education as provided by Section 504 of the Act of The Rehabilitation 1973, the With Disabilities Act, 42 U.S.C. § 12132 and 42 US.C. § 12203(b) as well as a safe educational environment. Such negligence *per se* was a proximate cause of Plaintiff's damages as described herein.

## XII. DAMAGES

80. Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

81. Plaintiff seeks all damages allowed by law as a result of the injuries and damages suffered by Plaintiff as articulated herein. As a direct and proximate result of the Defendants' conduct, Frankie has suffered emotional injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

| | |
|---|---|
| a. reimbursement of advocate fees | $1,450.00 |
| b. reimbursement past tutoring fees | $5,612.00 |
| c. loss of appropriate education /future college tutoring | $48,000.00 |
| d. reimbursement of past counseling | $611.68.00 |
| e. punitive damages | $50,000.00 |
| f. mental and emotional distress | $50,000.00 |
| g. Total damages sought | $155,673.68 |

82. By reason of the above, the subject of this lawsuit, Plaintiff have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

### XIII. REQUEST FOR JURY TRIAL

83. Plaintiff requests a jury trial on this matter to the extent permissible by law and statute.

### XIV. ATTORNEYS' FEES & COSTS

84. Plaintiff requests the Court award Plaintiff attorneys' fees and costs in the amount of $21,326.34 to the extent permissible by law and statute. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs und 29 U.S.C. 794a as well as pursuant to the ADA and 42 U.S.C. 12132.

### XV. TOLLING OF THE APPLICABLE STATUES OF LIMITATION

85. Plaintiff hereby incorporates, repeats, and re-alleges all prior paragraphs of the Complaint as if set out here in full.

86. To the extent that portions of this action based upon events occurring beyond the statutes of limitation, Plaintiff allege that on August 21, 2015, he was in a severe automobile accident. Plaintiff sustained closed head trauma, bleeding in the brain, a fractured rib, a concussion, and memory loss. Plaintiff was released from a doctor's care in March 2016.

87. Due to the nature of Plaintiff's injuries from the automobile accident, the Plaintiff failed to meet the deadline for timely filing said portions of this action and seeks a 8 month toll of limitations.

### XVI. PRAYER FOR RELIEF

88. **WHEREFORE,** Plaintiff prays for judgment against HPS-HSN, in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and cost for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, 42 U.S.C. 200 et seq. and Chapter 74 of the Texas Civil Practice and

Remedies Code, together with pre-and post-judgment interest, and court cost expended herein, and for such other relief as this Court in equity, deems just and proper.

Respectfully submitted,

By: s/ Frankie Morgan
Frankie Morgan, Pro Se

By: s/ Angela Morgan-Lyles
Angela Morgan-Lyles, Pro Se

6931 Clarkridge Drive
Dallas, TX 75236
469-222-1812

JS 44-TXND (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Frankie Morgan, Angela Morgan-Lyles

**DEFENDANTS** Harmony Public School, Harmony School of Nature + Athletics, Harmony School of Nature Hatoon Dablock, Jennifer Robertson, Winston Tony Ersin Korcur G. William Franz, Roberto Barajas Thomas, Alexandra Goldblatt, Gloria Meyers, Robert Lichtscheidl

**(b)** County of Residence of First Listed Plaintiff __Dallas__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Dallas__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

3-16CV0898-D

Attorneys *(If Known)*

MAR 31 '16

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Discrimination because of Disability; ADA of 1990 (Title II) Rehabilitation Act of 1973 § 420 SC

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE 31 March 2016
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 11/15)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is realted to this filing if the case: 1) involves some or all of the same parties and is based on the same or a similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.